UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-cv-00642-FDW-DSC

| | |
|---|---|
| JIUNA WANG and YUELIN LIU, )<br>)<br>    Plaintiffs, )<br>)<br>vs. )<br>)<br>NYZ MANAGEMENT SERVICES, LLC, )<br>DANIN NOUANTHANUVANH, LI )<br>ZHOU, and SCOTT XI YAO, )<br>)<br>    Defendants. )<br>) | ORDER |

THIS MATTER is before the Court on Defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 11). In the alternative, Defendants argue the case should be stayed pending the completion of Alternative Dispute Resolution. Plaintiffs timely responded to Defendants' Motion to Dismiss. (Doc. No. 15). Defendants did not file a reply, and the time for doing so has passed. Upon review by the court, Defendants' motion is GRANTED IN PART and DENIED IN PART, and the case is STAYED pending the completion of Alternative Dispute Resolution.

### I. BACKGROUND

Plaintiffs Jiuna Wang and Yuelin Liu filed this action on November 22, 2019. (Doc. No. 1). Both Plaintiffs are citizens of the People's Republic of China and temporarily reside in the Western District of North Carolina. Id. at 1. Defendants Li Zhou, Danin Nouanthanuvanh, and Scott Xi Yao are employees of Defendant NYZ Management Services ("NYZ"), a North Carolina Limited Liability Company with its principal office and registered agent both in Charlotte, NC.

1

Id. at 1-2.

In 2018, Defendant Nouanthanuvanh, NYZ's Vice President, and Defendant Yao, NYZ's Chief Financial Officer, informed Plaintiffs of a real estate opportunity. Id. at 3. Plaintiffs entered into a Joint Venture Agreement (the "Agreement") with NYZ on April 6, 2018, whereby Plaintiffs agreed to loan $300,000 to purchase, build, and sell a home located in Charlotte, North Carolina, and Defendants agreed to repay the loan either upon selling the home or at the termination of the agreement, with a 12 percent return and any additional profits from the sale. Id. at 4. The Agreement contained, *inter alia*, an Alternative Dispute Resolution clause. (Doc. No. 1-1, p. 7). Additionally, Plaintiffs allege Defendants owed Plaintiffs a duty to "make complete executive decisions on [the joint venture's] financial investments" and that "[a]t all relevant times" Defendants had exclusive control over the "books, records, and entire assets of the joint venture." (Doc. No. 1, pp. 4, 6) (alteration in original) (quotation omitted).

Upon execution of the Agreement, Plaintiffs paid Defendants the loan amount of $300,000 and the Charlotte home was later sold in December 2018 for the purchase price of approximately $335,000. Id. at 5. Upon notification of the sale, Plaintiffs asked Defendants about returning the loan amount, to which Defendants allegedly claimed the $300,000 and additional profits would be returned upon termination of the agreement in March 2019. Id. at 5-6.

On approximately August 24, 2019, Plaintiffs received a letter from Defendant Nouanthanuvanh apologizing for the conduct of the other Defendants and explained there was a breach of contract, Plaintiff's loan contribution had been "misappropriated," and that the funds would be returned to Plaintiffs. Id. at 6. After receiving the letter, Plaintiffs met with Defendants in August 2019. Id. Plaintiffs allege during this meeting Defendants admitted to misusing

2

$100,000 of Plaintiffs' loan for matters unrelated to the Agreement.  Id.

Plaintiffs allege they attempted to negotiate with Defendants to resolve the dispute, but Defendants failed to respond to their communications.  Id.  Plaintiffs obtained counsel, who sent a demand letter to Defendants for an accounting.  Id. at 7.  Plaintiffs allege they have not received the aforementioned accounting or any amount of the funds loaned to Defendants in 2018 pursuant to the Agreement.  Id.

Plaintiffs filed suit in November 2019, alleging claims for: (1) accounting, (2) fraud, (3) breach of fiduciary duty, (4) breach of contract, (5) conversion, and (6) constructive trust.  See generally id.  Defendants filed the present motion to dismiss, arguing that the Court does not have subject matter jurisdiction for lack of diversity and Plaintiffs have failed to state a claim upon which relief can be granted.  (Doc. No. 12, p. 1.).  In the alternative, Defendants argue that the case should be stayed pending the completion of Alternative Dispute Resolution.  Id. at 6.

## II.     STANDARD OF REVIEW

Lack of subject matter jurisdiction may be raised at any time either by a litigant or the court.  Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382 (1884).  The ability of the court to independently address subject matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject matter jurisdiction for the first time on appeal, thereby voiding the judgment.  Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804).  The Federal Rules of Civil Procedure anticipate this issue and provide that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

3

When a court considers its subject matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held as follows:

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to *de novo* appellate review.

Id. at 768-69 (citations omitted).

In order to survive a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). While the Court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). A court cannot "accept

4

as true allegations that contradict matters properly subject to judicial notice or by exhibit." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (citations and quotations omitted).

### III. ANALYSIS

#### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). A federal district court has subject matter jurisdiction only if it has federal question jurisdiction under 28 U.S.C. § 1331, which provides jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," or diversity jurisdiction under 28 U.S.C. § 1332. 28 U.S.C. §§ 1331-1332; see also Sanderlin v. Hutchens, Senter & Britton, P.A., 783 F. Supp. 2d 798, 800 (W.D.N.C. 2011). For the Court to have diversity jurisdiction, the amount in controversy must exceed $75,000, exclusive of interest and costs, and both parties must be citizens of different states or citizens of a state and citizens of a foreign state. See Sanderlin, 783 F. Supp. 2d at 800 (citing 28 U.S.C. § 1332); see also Slavchev v. Royal Caribbean Cruises, Ltd., 559 F.3d 251, 254 (4th Cir. 2009) (discussing the court's authority to hear suits between U.S. citizens and foreign citizens). Citizenship is determined by domicile, which "requires a party's physical presence in a state coupled with an intent to remain there permanently." Brooks v. Shope, No. 3:09-cv-334-FDW-DSC, 2011 WL 124724, at *5 (W.D.N.C. Jan. 14, 2011). An individual can only have one domicile, which is to be determined by a consideration of the totality of the circumstances, including the party's subjective intent to acquire or retain a domicile. Id.

The language of the jurisdictional statute states federal district courts have diversity

5

jurisdiction over "citizens of a state and citizens or subjects of a foreign state," pursuant to 28 U.S.C. § 1332(a)(2). 28 U.S.C. § 1332(a)(2); see also Slavchev, 559 F.3d at 254 (acknowledging § 1332(a)(2) gives district courts jurisdiction over "cases between a citizen of a state and a citizen of a foreign state"). In 2011, § 1332(a)(2) was amended to create an exception that "the district courts shall not have original jurisdiction . . . of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." See Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112-63, § 101, 125 Stat. 758, 758 (2011); 28 U.S.C. § 1332(a)(2). In other words, the amendment clarified that district courts do not have subject matter jurisdiction over cases with permanent resident aliens or non-resident aliens on both sides of the suit. See Tagger v. Strauss Grp. Ltd., 951 F.3d 124, 125 (2d Cir. 2020) (per curiam) ("[W]e hold that [§] 1332(a)(2) does not confer diversity jurisdiction where a permanent resident alien sues a non-resident alien . . . ."); see also Saadeh v. Farouki, 107 F.3d 52, 60 (D.C. Cir. 1997) (determining diversity does not exist between an alien and a permanent resident alien because complete diversity is destroyed).

Here, Defendants argue that Zhou is a citizen of the People's Republic of China, thus destroying diversity since Plaintiffs are both citizens of the People's Republic of China. (Doc. No. 12, p. 5). Plaintiff argues that the Court has diversity jurisdiction because Zhou is a permanent resident alien due to his green card status and is domiciled in North Carolina, making him a citizen of North Carolina under § 1332(a)(2). (Doc. No. 15, p. 2-3). However, § 1332(a)(2) does not confer this Court jurisdiction over a case with alien Plaintiffs and a permanent resident alien

6

Defendant because complete diversity is destroyed. 28 U.S.C. § 1332(a)(2); see also Tagger, 951 F.3d at 125.

At first glance, it may seem that diversity exists because the amount in controversy is $300,000, the Plaintiffs are citizens of the People's Republic of China, and Defendants are alleged to be North Carolina citizens. (Doc. No. 1, p. 1-3). However, Zhou states that, while he does hold a green card, he "is a citizen of the People's Republic of China" and he "is not a citizen of any other nation." (Doc. No. 11-1). Zhou may currently reside in North Carolina, but he unquestionably retains his Chinese citizenship. Regardless of domicile, however, the Court does not have jurisdiction over cases involving aliens and permanent resident aliens on both sides of the suit pursuant to § 1332(a)(2). Thus, Zhou's permanent resident status and citizenship in the People's Republic of China destroys diversity because Plaintiffs are also citizens of the People's Republic of China. Therefore, the Court lacks jurisdiction to hear Plaintiffs' claims against Defendant Zhou. Against the other Defendants, however, diversity of citizenship still exists— Plaintiffs are citizens of the People's Republic of China, Defendant NYZ is a North Carolina LLC, Defendant Nouanthanuvanh is an American citizen who is domiciled in North Carolina, and Defendant Yao is also an American citizen domiciled in North Carolina, and the amount in controversy exceeds $75,000. (Doc. No. 1, p. 1-4).

To the extent that Defendant Zhou destroys diversity jurisdiction, the Motion to Dismiss (Doc. No. 11) as it pertains to him is GRANTED. Plaintiffs ask the Court to drop Defendant Zhou from the suit should it grant the motion (Doc. No. 15, p. 6). Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action. . . . the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Accordingly, to the extent

7

the remaining Defendants—NYZ, Nouanthanuvanh, and Yao—request dismissal on grounds of lack of diversity subject matter jurisdiction, the motion is DENIED.

### B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

The remaining defendants have also moved the Court to dismiss the case under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, contending Plaintiffs have failed to comply with a mandatory arbitration clause. (Doc. No. 12, p. 5). Plaintiffs contend the agreement to arbitration clause is not binding and, in the alternative, asks the Court to stay the case pending arbitration. (Doc. No. 15, pp. 6, 10).

In passing the Federal Arbitration Act ("FAA"), Congress made clear its approval of arbitration as a more efficient means of dispute resolution. Hightower v. GMRI, Inc., 272 F.3d 239, 241 (4th Cir. 2001); see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). As the Fourth Circuit has noted, because FAA provisions are mandatory, "courts must compel arbitration when a valid arbitration agreement exists." Hightower, 272 F.3d at 241. "In order to compel arbitration, 'the court must first find that an arbitration agreement exists between the parties.'" Kargarian v. Papa John's Pizza, No. 3:18-cv-00439-FDW-DCK, 2019 WL 1382508, at *1 (W.D.N.C. Mar. 27, 2019) (quoting Hightower, 272 F.3d at 242). To do so requires an application of state contract law. See id. at *1-2 (applying state contract law to determine if a valid arbitration agreement exists); see also Hightower, 272 F.3d at 242 (same). Per the choice-of-law clause in the Agreement, North Carolina law governs and neither party has argued otherwise. (Doc. No. 1-1, p. 8; Doc. No. 12; Doc. No. 15).

North Carolina strongly favors settling disputes by arbitration and its "Supreme Court has held that where there is any doubt concerning the existence of an arbitration agreement, it should

8

be resolved in favor of arbitration." Martin v. Vance, 514 S.E.2d 306, 309 (N.C. Ct. App. 1999). Additionally, when faced with two different dispute resolution clauses, the Court should give both provisions effect "if this can be done by a fair or reasonable interpretation." Internet E., Inc. v. Duro Commc'ns, Inc., 553 S.E.2d 84, 88 (N.C. Ct. App. 2001) (determining an arbitration and forum selection clause did not conflict with one another because the arbitration process does not operate freely from state and federal court systems).

"Courts have recognized that the threshold is very low for finding an arbitration agreement to be binding." Bowers v. N. Two Cayes Co., Ltd., 1:15-cv-00029-MR-DLH, 2017 WL 4310856, at *5 (W.D.N.C. Sept. 27, 2017). In order to be binding, courts have held arbitration agreements with the language "to resolve" in reference to any potential disputes between the parties makes arbitration binding because the word "'resolves' implies a firm or final decision." Id. Additionally, arbitration agreements have been upheld as binding when the parties make reference "to the AAA rules, because such rules relate only to binding arbitration." Id.

Finally, the Court must also decide "whether the dispute between the parties falls within the scope of the agreement." Whisnant v. JP Morgan Chase Bank, No. 3:05-CV-340, 2005 WL 2429483, at *2 (W.D.N.C. Oct. 3, 2005). Broad statements in arbitration clauses, such as those involving "arising out of or relating to," encompass an expansive range of disputes. See U.S. Sur. Co. v. Hanover R.S. Ltd. P'ship, 543 F. Supp. 2d 492, 495 (W.D.N.C. 2008) ("According to the Fourth Circuit, [b]oth the Supreme Court and this court have characterized similar formulations [of 'arising out of or relating to'] to be broad arbitration clauses capable of extensive reach." (quotation omitted)). Further, the test is whether there is a "significant relationship" between the dispute and the Agreement itself. Id.

9

Plaintiffs structure much of their argument on the notion that the presence of the clause permitting litigation in North Carolina state or federal courts somehow preempts the arbitration clause. (Doc. No. 15, p. 8-9). While Plaintiffs argue that lack of counsel during negotiations of the contract and presence of consent to jurisdiction and arbitration clauses evidences lack of mutual assent, this is not so. Id. Although both clauses exist, they are not in conflict with each other and can each be given effect. Internet E., 553 S.E.2d at 88. Thus, the arbitration clause and contract itself are presumptively valid under North Carolina law.

The parties also disagree about the binding effect of the arbitration clause. (Doc. Nos. 12 & 15). Plaintiffs argue that the arbitration clause is not binding because its language is not mandatory, alleging it is "ambiguous and inconclusive." (Doc. No. 15, p. 7). In contrast, Defendants argue that the arbitration clause is unambiguously mandatory. (Doc. No. 12, p. 6). The language of the arbitration clause, however, is clear. It states the parties will "resolve the dispute" by way of Alternative Dispute Resolution ("ADR") and the arbitration is to adhere to the rules of the AAA. (Doc. No. 1-1, p. 7). The use of the word "resolve," in addition to the language that "[t]he arbitrator's award will be final" and reference to the AAA clearly indicate this is a binding arbitration provision. (Doc. No. 1-1, p. 7); Bowers, 2017 WL 4310856, at *5. Thus, the arbitration clause is binding and therefore mandatory.

Finally, the language of the arbitration clause is broad, stating that "any controversies or disputes arising out of or relating to" the Agreement are subjected to the ADR procedure. (Doc. No. 1-1, p. 7). The dispute between Plaintiffs and Defendants is the loan amount of $300,000 which was allegedly never returned in compliance with the terms of the Agreement, which stipulated a repayment either once the Charlotte home sold or the termination of the Agreement

itself. (Doc. No. 1, p. 4-6). Thus, the dispute falls within the Agreement's scope because there is a "significant relationship" between the dispute and the Agreement. See U.S. Sur. Co., 543 F. Supp. 2d at 495.

While "the district court has discretion to dismiss an action where all issues raised therein are arbitrable, the more common practice is to stay the action pending outcome of the arbitration." See Parker v. Beazer Mortg. Corp., No. 3:08CV142, 2008 WL 4107523, at *3 (W.D.N.C. Aug. 27, 2008) (staying the case instead of dismissing); see also Kargarian, 2019 WL 1382508, at *2 (same); Geiger v. H&H Franchising Sys., Inc., No. 3:17-CV-00738-FDW-DSC, 2018 WL 3995953, at *3 (W.D.N.C. Aug. 20, 2018) (same). Thus, Defendants' Motion to Dismiss is DENIED.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 11) is GRANTED IN PART and DENIED IN PART. Defendant Zhou is DISMISSED from the action. The parties are ORDERED to proceed to arbitration and submit a status report to the Court within 180 days of this Order. This matter is STAYED pending completion of arbitration.

IT IS SO ORDERED.

Signed: June 2, 2020

_____
Frank D. Whitney
Chief United States District Judge